Jackson, J.
The first objection suggested by the defendant is that a court of common law is not competent alone to carry into effect the provisions of the statute relied on ; and that there ought o have been a previous adjustment or apportionment made in the ^róbate Court, as a court of chancery, of the amount due from each respective legatee, devisee, or heir.
It is apparent that this controversy might have been better set tied in a court of chancery jurisdiction, where all the parties con cerned could have been brought at once into court, and their respective interests and liabilities adjusted, and where all of them would have been bound by the final decree. In this Court, the plaintiff, in order to show what is due from the devisee sued in one action, must show what is due from every other party liable to contribute. This is not only inconvenient, but may be hazardous, for the. plaintiff; as the absent parties are not concluded by this judgment, and in a new action against either of them it may appear, from other evidence, that his share is less than is now supposed, when the plaintiff will lose the difference.
*This is one of the numerous cases in which suitors [ *453 ] are exposed to loss and inconvenience for want of a ' court with general chancery powers. But it is not for us to remedy the inconvenience. The statute of 1783 expressly gives to the plaintiff an action at law, to compel the contribution ; and the Probate Court is not authorized to take cognizance of the cause, or to make any decree relating to it. The powers of this Court are competent to the determination of this action, according to the provisions of the statute ; although we cannot at the same time settle *446 the whole controversy between all the parties, in the manner thal would be most convenient and beneficial for all concerned.
The second objection is, that the action should have been brought against all the parties liable to contribute, and not against any one alone.
This is answered by the words, and the obvious intent, ■ of the statute: “ All the other legatees, &{C., shall refund their average or proportional part, fyc.” If an action could be maintained against them all jointly, the execution might be levied wholly on one ; whereas the statute plainly intends that, in the action given to the sufferer, he shall recover against each of the others only the proportional part of such defendant. The liability of each of the other devisees, and, of course, the implied promise arising from it, is, in its nature, several, like that of joint sureties, as to contribution among themselves. (1) Nor would there be less expense or inconvenience by allowing such a joint action ; as, after a recovery in such a suit, the contribution would still remain to be adjusted ; and there must be, on the whole, as many different suits in one case as in the other. No one devisee would be bound by the apportionment made in any suit for contribution against another devisee.
The third objection has still less weight in our minds. When the statute expressly gives this action, it is no answer to it to say that the plaintiff has another remedy.
The remaining question is that which has presented the greatest difficulty in this cause. But, on the whole, we are all satisfied that the defendant is liable only for his aliquot [ * 454 ] * part of the sum paid by the plaintiff, without regard to the amount due from those devisees who are dead or insolvent.
There is much weight in the argument of the plaintiff’s counsel, that he ought not to be in a worse situation than if the defendant’s land, instead of his, had been taken on the execution against the executor. But we can find no remedy, either at the common law or in the statute, for this apparent injustice. The same inequality sometimes occurs amongst joint sureties. In the case of Cowell, Admr., vs. Edwards, before referred to, there were six sureties. The plaintiff’s intestate, who was one of them, had paid more than his proportion, and the action was brought against another co-surety, for one third of the sum paid, on a suggestion that the principal and three of the co-sureties were insolvent. But the Court held that, even if it were proved that the three other co-sureties were insol vent, the plaintiff could not, in a suit at law, recover more than one sixth against the defendant.
*447 It seems more conformable to the principles of justice, that all the parties who are solvent should bear equally the loss arising from the insolvency of the others. This is the principle adopted in chancery; and it is also the rule of the civil law. In the latter, however, the surety who has paid cannot maintain an action for contribution against his co-surety ; but the object is attained, in the suit of the creditor against him, by the exception, or privilege, of division, as it is called, by which he may compel the creditor to resort to each of the sureties, who is then solvent, for his proportional part. (2)
In the present case, the devisees, who are liable by the statute to contribute, are not, strictly speaking, joint sureties for the executor, who is the principal debtor. Their obligation may be considered rather as resulting from a lien on the goods and estates of the tes tator, which have come to their hands respectively, and which were all previously charged with the debts of the testator.
In this view, it resembles a statute merchant, or staple, which binds the lands of the conusor, in whose hands soever * they may be after his death. If there are several pur- [ * 455 ] chasers of different parts of the land, and the execution be extended on the lands of one of the terre-tenants only, he may have contribution against the other tenants. But when we look into the process or manner of enforcing this contribution, it appears to be, like that of the civil law before mentioned, by compelling the creditor to resort, in the first instance, to all the lands liable for the debt; and he then holds the whole until his debt is satisfied out of the rents and profits. There is no action at law, by the first terre-tenant against the others, for the contribution. (3) This case, therefore, whilst it seems to prove the equity of the plaintiff’s claims, shows also that the common law furnishes no remedy to enforce them.
This apparent defect of justice, however, is not imputable to the common law. The plaintiff’s original liability, and the loss he has sustained, arise from the provisions of the statute; and the same statute has provided the only remedy which this Court can apply.
Perhaps it would not be found easy to make any statute provis ions which would obviate the apparent injustice of this case. II the original creditor, while seeking to recover his debt out of the effects of his deceased debtor, should be required to resort to all the legatees and devisees, or to enforce his demand ratably against each of them, this would impede, and in some measure defeat, his just and legal claims, for the benefit of those who claim only under *448 the bounty of the deceased. On the other hand, if it should be attempted to make all the parties who remain solvent liable equally for those who are insolvent, in actions for contribution among themselves, it might be very difficult to decide what should constitute such insolvency, and how it should be proved. Provision must also be made for a resort to the future effects of such insolvent party; and, in short, it is to be apprehended that such a principle would not be easily applied in courts of common law, and that it would introduce much embarrassment and confusion.
* According to the statute now in force on the subject, each legatee and devisee must refund his proportional part of the loss sustained by the plaintiff by the levy of Boylston’s execution; and if any of them are unable to pay their proportions, the plaintiff cannot call on the others to indemnify him against that loss. The verdict, according to the agreement of the parties, must be amended so as to conform to this opinion, and judgment must be rendered for the plaintiff on the verdict so amended.

 2 B & P. 268, Cowell, Admr., vs. Edwards.

 Inst. lib 3, tit. 21, § 4.— Cod lib. 8, tit. 41, L. 10, 11.

 3 Co. 11, 14.