WILLIAM HORRABIN, Appellee, v. CITY OF DES MOINES, Appellant.

**TRESPASS:   Parties in Pari Delicto—Exceptions.**   A contractor who
1   erects an improvement for a city on ground which he innocently and justifiedly supposed had been acquired by the city, as it had contracted to do, and is held in damages as a joint trespasser with the city, may, on payment of the judgment, enforce full reimbursement from the city.

**CONTRACTS:   Construction—Clause to Hold Harmless—Applicability.**
2   A contract clause in effect obligating a contractor to hold a city harmless from all damages growing out of any trespass occurring during the progress of the work has no application to a trespass innocently committed by the contractor at the instigation of the city.

*Appeal from Polk District Court.*—JAMES C. HUME, Judge.

SEPTEMBER 26, 1924.

ACTION in equity by one of two parties held jointly liable to a third for a trespass, to recover against the one primarily liable the amount paid in satisfaction of the judgment. From a judgment for plaintiff, defendant appeals.—*Affirmed.*

*John J. Halloran, Reson S. Jones, Chauncey A. Weaver,* and *Paul Hewitt,* for appellant.

*Miller, Kelly, Shuttleworth & McManus,* for appellee.

VERMILION, J.—This case was tried below on a stipulation of facts from which it appears that the appellee, Horrabin, entered into a written contract with the appellant city to construct

1. TRESPASS: parties *in pari delicto*: exceptions.

a bridge over the Des Moines River at University Avenue. The contract is in evidence as a part of the stipulation. From both the contract and the stipulation it appears that the city agreed to furnish appellee the right of way upon which the bridge and approach should be constructed. It is stipulated that, under the direction of the city engineer of the appellant, appellee entered upon certain land belonging to the Central Ice Company and built the bridge or the approach thereon, and that at that time the city did not have the right to the use, occupancy, and possession of such land, and did not acquire such right until some two years later. It is further stipulated that the Central Ice Company brought suit against both the city and the appellee for the damages resulting from the trespass upon its property, and recovered a judgment against both defendants, which appellee has paid. This action, begun and tried in equity, is to recover of the city the amount so paid.

That the city and the appellee were, as to the Central Ice Company, joint tort-feasors, and therefore both liable for the trespass, was settled by the judgment against them. It is familiar law that, speaking generally, as between joint wrongdoers,

there can be no contribution. The rule is subject to exceptions, however. The only question in the case is whether appellee is, under the facts, within any recognized exception to the general rule.

Judge Cooley, after stating the general rule, observes:

"But there are some exceptions to the general rule which rest upon reasons at least as forcible as those which support the rule itself. They are of cases where, although the law holds all the parties liable as wrongdoers, to the injured party, yet, as between themselves, some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete. There are many such cases where the wrongs are unintentional, or where the party, by reason of some relation, is made chargeable with the conduct of others." Cooley on Torts (2d Ed.) 167.

The author cites the case of the employee of a railroad company who is directed by its officers to do an act which it turns out they had no right to do, and for doing which he is made to pay damages, and continues:

"Here, if the act was a plain and manifest wrong, as would be leaving the cars to commit a battery, the servant can have no indemnity, because he must have known the act to be unlawful; but if the act directed was one he had reason to suppose was legal, and he obeyed directions on that supposition, it would ill become the railroad company to demand that he be treated as a wrongdoer when called upon to indemnify him against the consequences of the act its officers had directed. In such a case the servant is not, in morals, a wrongdoer at all, and his claim to indemnity would be based upon a faithful obedience to orders which he had a right to presume were rightful, nothing to the contrary appearing." Cooley on Torts (2d Ed.) 168.

The doctrine so announced and illustrated has been often and in a great variety of situations applied by the courts in cases where, while both parties were liable to the person injured because of some breach of duty, yet, as between the wrongdoers themselves, by reason of their relations or a difference in the character of the duty under which they rested, they were not equally guilty,—were not *in pari delicto*.

Where two parties commit an unlawful act involving moral turpitude or delinquency, to the injury of another, they are equally guilty, and as between them the law will not inquire into their relative delinquency or compel contribution at the instance of one who has paid the damages. But if their act be merely *malum prohibitum,* and is in no respect immoral, while they are both liable to one injured by their unlawful act, if one has paid the damages the law will not refuse, as between the wrongdoers, to determine their relative guilt and administer justice between them. *Inhabitants of Lowell v. Boston & Lowell R. Corp.,* 23 Pick. (Mass.) 24 (34 Am. Dec. 33); *Washington Gas Light Co. v. District of Columbia,* 161 U. S. 316 (40 L. Ed. 713); *Union Stock Yards Co. v. Chicago, B. & Q. R. Co.,* 196 U. S. 217.

Where one of two parties does an act or creates a nuisance, and the other, while not joining in the act, is, nevertheless, thereby exposed to liability to one injured, the rule that there is no contribution between joint tort-feasors does not apply; and the one who was the primary and active wrongdoer can be compelled to make good to the other any loss occasioned by the act. *Chicago & N. W. R. Co. v. Dunn,* 59 Iowa 619; *Westfield Gas & Mill. Co. v. Noblesville Gravel Road Co.,* 13 Ind. App. 481 (41 N. E. 955); *Pennsylvania Steel Co. v. Washington Bridge Co.,* 194 Fed. 1011; *City of Des Moines v. Barber Asphalt Co.,* 208 Fed. 828; *Chesapeake & Ohio Canal Co. v. County Com.,* 57 Md. 201 (40 Am. Rep. 430); *Gray v. Boston Gas Light Co.,* 114 Mass. 149; *Pfau v. Williamson,* 63 Ill. 16; *Philadelphia Co. v. Central Traction Co.,* 165 Pa. St. 456 (30 Atl. 934); *Minneapolis Mill Co. v. Wheeler,* 31 Minn. 121 (16 N. W. 698); *Churchill v. Holt,* 127 Mass. 165; *Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola,* 134 N. Y. 461 (31 N. E. 987); *Union Stock Yards Co. v. Chicago, B. & Q. R. Co.,* supra.

Of this class are the numerous cases holding that a municipality, upon being called upon to pay a judgment against it for damages caused by the negligence of one occupying a street or sidewalk as a licensee, and under obligation to avoid the creation of a nuisance, may recover the amount so paid from the party primarily responsible for the condition complained of.

*City of Ottumwa v. Parks,* 43 Iowa 119; *City of Des Moines v. Des Moines Water Co.,* 188 Iowa 24; *Catterlin v. City of. Frankfort,* 79 Ind. 547 (41 Am. Rep. 627); *City of Chicago City v. Robbins,* 67 U. S. 418 (17 L. Ed. 298); *Old Colony R. Co. v. Slavens,* 148 Mass. 363; *Severin v. Eddy,* 52 Ill. 189; *Washington Gas Light Co. v. District of Columbia,* supra.

Where one is employed or directed by another to do an act not manifestly wrong, the law implies a promise of indemnity by the principal for damages resulting proximately from the good-faith execution of the agency. *Henderson v. Eckern,* 115 Minn. 410 (132 N. W. 715); *Guirney v. St. Paul, M. & M. R. Co.,* 43 Minn. 496 (46 N. W. 78); *Ladd v. Town of Waterbury,* 34 Vt. 426; *Inhabitants of Lowell v. Boston & Lowell R. Corp.,* supra; *Williams v. Mercer,* 144 Mass. 413 (11 N. E. 720); *Gower v. Emery,* 18 Me. 79; *Drummond v. Humphreys,* 39 Me. 347.

One of the tests in determining whether there may be contribution or indemnity in favor of one joint wrongdoer against another is whether the former knew, or must be presumed to have known, that the act for which he has been held liable was wrongful. *Johnson v. Torpy,* 35 Neb. 604 (53 N. W. 575); *Acheson v. Miller,* 2 O. St. 203; *Gower v. Emery,* supra; *Drummond v. Humphreys,* supra; *Armstrong County v. Clarion County,* 66 Pa. St. 218 (5 Am. Rep. 368); *Bailey v. Bussing,* 28 Conn. 455; *Jacobs v. Pollard,* 10 Cush. (Mass.) 287 (57 Am. Dec. 105); *Farwell v. Becker,* 129 Ill. 261 (21 N. E. 792, 6 L. R. A. 400); *Atkins v. Johnson,* 43 Vt. 78 (5 Am. Rep. 260). See, also, 6 Ruling Case Law 1054 and 31 Corpus Juris 455.

With these principles in mind, it seems clear that the facts of the present case bring it within an exception to the general rule that there can be no contribution or indemnity between joint tort-feasors. The appellee was but carrying out his contract with the city. That contract provided that the city should procure the necessary right of way for the construction of the bridge and approach. Any uncertainty in this respect arising from the somewhat ambiguous language of the contract is entirely removed by the stipulation upon which the case was submitted. He entered upon the land of the Central Ice Company

and constructed the approach thereon by direction of the city's engineer in charge of the work. While, as between himself and the owner of the property, he was a trespasser, and liable as such, as between himself and the city he was but acting in fulfillment of his contract, and under the direction of the properly constituted authority of an officer of the city. He had a right to assume, when directed to proceed with the work upon the premises of the Central Ice Company, that the city had, in compliance with its contract, procured the right to so use the ground. What he did was done, not for himself, but for the city, and under its direction. It involved no moral delinquency, but, so far as he was concerned, was merely the performance of his legal contract. That he acted in ignorance of the fact that the city had no right to go upon the land in question is the plain inference from the facts stipulated. As between himself and the city, the wrong was the wrong of the city; they were not *in pari delicto*.

Nor do we think the city was relieved from liability by provisions of the contract to the effect that appellee should indemnify and hold the city harmless from all injury or damages to persons or property arising from any act done 2. CONTRACTS: construction: clause to hold harmless: applicability. or suffered to be done by the appellee, and that appellee would pay all just claims growing out of the work because of trespass, waste, or negligence of any kind on the part of appellee. It would not be contended, we think, that these provisions could operate to relieve the city from its obligation to procure the necessary right of way for the construction of the bridge. But if they are to be construed as requiring appellee to pay the damages caused by his entry, under direction of the city, upon the land where the bridge and approach were to be constructed, and which the city undertook to procure for that purpose, he could as logically and reasonably be required to pay the damages caused by the taking of the land and the construction thereon of the permanent improvement. The effect of these provisions of the contract was neither to release the city from its obligation to procure the right of way nor to relieve it, as between itself and appellee, from liability for the damages caused by the act of the appellee

committed under its direction· in the carrying out of the contract, which act would not have been wrongful, had the city, as appellee had a right to assume, performed its contract.

The judgment is right, and is—*Affirmed*.

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.